```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
```

|   |   |
|---|---|
| DOUGLAS KORBA | : |
| | : |
| v. | : Civil Action No. DKC 12-1989 |
| | : |
| STANLEY BLACK & DECKER, INC. | : |
| | : |

**MEMORANDUM OPINION**

Presently pending and ready for review in this wage payment and breach of contract case is the motion to dismiss the amended complaint or, in the alternative, for summary judgment filed by Defendant Stanley Black & Decker, Inc. (ECF No. 13). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion – which will be construed as one for summary judgment – will be granted.[1]

**I.   Background**

   **A.   Factual Background**

Except as otherwise noted, the following facts are undisputed and are presented in the light most favorable to Plaintiff Douglas Korba, the non-moving party. In 1997, Korba began working for Stanley Black & Decker, a Connecticut corporation with offices in Prince George's County, Maryland.

---

[1] Defendant's motion to dismiss the original complaint (ECF No. 9) will be denied as moot.

At all times relevant to this action, Korba worked for Stanely Black & Decker in Maryland. Korba participated in Defendant's Management Incentive Compensation Plan ("MICP" or "the Plan"), which he describes as a bonus plan "based upon certain performance requirements and goals from January 1 through December 31 of each year." (ECF No. 12 ¶ 10). According to Korba, bonuses under the MICP are typically "earned as of December 31," although they are not paid out until "March or April of the following year." (*Id.* ¶ 12). Plaintiff avers that although he "never went one year without receiving a payment under the MICP" during his time with Stanley Black & Decker, there were years "when other employees did not receive payments under the MICP." (ECF No. 14-2, Korba Aff. ¶ 6). In years "when everyone received payments under the MICP," Korba states that he "consistently received higher payments" based on his status as a "high performer." (*Id.*). According to Plaintiff, "the payment of his MICP Bonus was promised to him in exchange for performance of his job." (ECF No. 12 ¶ 7).

At an unknown date, Stanley Black & Decker presented Plaintiff a document regarding the MICP bonus criteria for the period from January 1 to December 31, 2011 ("the 2011 MICP Criteria"). This document describes the MICP as "an annual cash award opportunity contingent upon achieving certain corporate, divisional and individual goals." (ECF No. 12-1, at 2).

According to the 2011 MICP Criteria, bonuses were to be determined according to the following weighted criteria: corporate objectives, which accounted for 25% of award determinations; divisional objectives, which accounted for 75%; and individual objectives, which functioned as a potential "modifier" of award amounts. (*Id.*). With respect to corporate objectives, the 2011 MICP Criteria states that the following metrics "may" be considered: earnings per share, cash flow, operating margins, and working capital turns. (*Id.*). With respect to individual objectives, the 2011 MICP Criteria states that an employee's rating as "exceptional," "solid," or "marginal" "may" result in "a discretionary premium or penalty." (*Id.* at 2, 6).

Among other provisions, the 2011 MICP Criteria document also states that: (1) "[t]he Plan does not affect the terms of any employment agreements that may exist between the Company and any Participant" (ECF No. 12-1, at 4); (2) "[p]articipation will be established by the Plan Administrator" (*id.*); (3) "[t]he Board of Directors . . . may at any time elect to amend, suspend, or terminate the Plan" (*id.* at 5); and (4) "[a]wards will be forfeited for voluntary termination or termination with cause prior to the payment date" (*id.* at 4). The document further states that all awards under the MICP are "Subject To The Terms And Conditions As Included In The MICP Plan Document"

3

(*id.* at 3), although Plaintiff contends that he never received a copy of the MICP Plan Document (ECF No. 14-2, Korba Aff. ¶ 3).

According to Plaintiff, he became eligible for a $50,000 bonus under the 2011 MICP Criteria "based upon his job performance in 2011." (ECF No. 12 ¶ 6). Before Plaintiff voluntarily resigned from Stanley Black & Decker on January 14, 2012, he requested payment of his bonus. Stanley Black & Decker refused to pay him any amount, even though Plaintiff contends that, as of the date of his resignation, he "had completed all requirements for payment of his MICP Bonus, achieved all of the goals required by the plan and earned his bonus." (*Id.* ¶ 9). Additionally, "other eligible recipients" apparently did receive 2011 MICP bonuses from Stanley Black & Decker in March 2012. (*Id.* ¶ 14).

### B. Procedural Background

On May 14, 2012, Korba filed a complaint against Stanley Black & Decker in the Circuit Court for Prince George's County, Maryland, asserting one count for breach of contract and one count for violation of the Maryland Wage Payment and Collection Act, Md. Code. Ann., Lab. & Empl. §§ 3-501 *et seq.* ("MWPCL"). (ECF No. 2). In addition to contractual damages, Korba seeks attorneys' fees and treble damages pursuant to the MWPCL. On July 3, 2012, Defendant removed the action to this court, asserting diversity jurisdiction under 28 U.S.C. § 1332. (ECF

No. 1).  One week later, on July 10, Stanley Black & Decker filed a motion to dismiss Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6).  (ECF No. 9).  Among other arguments, Defendant contended that the MICP Plan Document contains a choice of law provision that requires it to be construed according to Connecticut law, barring Plaintiff's MWPCL claim.  (ECF No. 9-1, at 6-9).  On July 25, Plaintiff filed an amended complaint as a matter of course, *see* Fed.R.Civ.P. 15(a)(1)(B), adding a new count for violation of the Connecticut wage payment law, Conn. Gen. Stat. §§ 558 *et seq*.  (ECF No. 12).  On August 8, Stanley Black & Decker filed a motion to dismiss Plaintiff's amended complaint or, in the alternative, for summary judgment.  (ECF No. 13).  On August 27, Plaintiff filed an opposition (ECF NO. 14), to which he attached an affidavit (ECF No. 14-1). Defendant timely filed a reply.  (ECF No. 15).

**II.  Standard of Review**

Because both parties rely on matters outside the pleadings, Defendant's motion will be treated as one for summary judgment. *See Walker v. True*, 399 F.3d 315, 319 n. 2 (4th Cir. 2005); *Offen v. Brenner*, 553 F.Supp.2d 565, 568 (D.Md. 2008).

Summary judgment may be entered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*,

532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). At the same time, the facts that are presented must be construed in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

**III. Analysis**

    **A.   Choice of Law**

At the outset, the parties dispute which state's law applies. Defendant argues that Connecticut law applies by virtue of a choice of law provision in the MICP Plan Document.

6

(ECF No. 13-1, at 6-11). Plaintiff counters that Maryland law governs because he never received a copy of the MICP Plan Document and therefore cannot be bound by its choice of law provision. (ECF No. 14-1, at 2-3; ECF No. 14-2 ¶ 3). Plaintiff also argues that he never had an opportunity to bargain with Stanley Black & Decker regarding "any of the terms of the MICP," such that the MICP "is essentially, a contract of adhesion." (ECF No. 14-1, at 3). As set forth below, Plaintiff's claims fail regardless of whether Maryland or Connecticut law applies. Therefore, the choice of law issue need not be resolved.

    **B.   Statutory Wage Payment Claims**

Defendant first contends that Plaintiff's statutory claims fail because MICP bonuses are not "wages" as defined by Connecticut or Maryland law given that Stanley Black & Decker had complete discretion regarding whether to make any awards under the Plan. (ECF No. 13-1, at 15, 20). Korba, in turn, argues that he completed all requirements to earn his bonus under the 2011 MICP Plan Criteria when the fourth quarter of 2011 ended, at which point Stanley Black & Decker no longer had discretion as to whether or not to pay him. (ECF No. 14-1, at 5-7). Defendant is correct because bonuses are not recoverable as "wages" under either Maryland or Connecticut law if they are awarded at the sole discretion of the employer.

Connecticut's wage payment statute requires an employer to pay a terminated employee's "wages" within a certain period of time, the length of which depends on whether the employee's termination was voluntary. *See* Conn. Gen. Stat. Ann. § 31-71c. "Wages" are defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." *Id.* § 31-71a(3). Under the Connecticut Supreme Court's interpretation of this definition, compensation must meet three requirements to be classified as "wages":  "(1) the award of compensation must be non-discretionary, (2) the amount of the compensation must be non-discretionary, and (3) the amount of the bonus must be dependent on the employee's performance." *Datto Inc. v. Braband*, 856 F.Supp.2d 354, 271 (D.Conn. 2012) (synthesizing a trio of recent Connecticut Supreme Court decisions). Thus, a bonus that is required to be awarded by an employment contract and that is calculated based on a precise formula set forth in such an agreement constitutes "wages." *Ass'n Resources, Inc. v. Wall*, 298 Conn. 145, 177-78 (2010). By contrast, bonuses are not "wages" when they are awarded at the sole discretion of the employer as part of a stand-alone, opt-in bonus plan. *Weems v. Citigroup, Inc.*, 289 Conn. 769, 782 (2008).

Treatment of bonuses under Maryland's wage payment statute is much to the same effect. Pursuant to the MWPCL:

> [E]ach employer shall pay an employee or the authorized representative of an employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated.

MD Code Ann., Lab. & Employ., § 3-505(a) (2004). The statute defines "wages" as "all compensation that is due to an employee for employment." *Id.* § 3-501(c)(1). The term "wage" includes "a bonus," "a commission," "a fringe benefit," or "any other remuneration *promised* for service." *Id.* § 3-501(c)(2) (emphasis added). Importantly, not all bonuses are "wages." The Maryland Court of Appeals has held that a bonus constitutes "wages" for purposes of the MWPCL "only when it has been *promised* as part of compensation." *Whitting-Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 305 (2001) (emphasis added) (profit-sharing bonus did not constitute "wages" because it was not promised as part of the employee's compensation package for the time period in question). A bonus that is awarded at the discretion of the employer is "merely a gift, a gratuity, revocable at any time before delivery" and is not covered by the MWPCL. *Id.* at 306; *see also Varghese v. Honeywell Int'l, Inc.*, 424 F.3d 411, 420 (4th Cir. 2005) (Maryland law) (former employee's stock options were not "wages" payable under the MWPCL because the employer

9

"always retained the discretion" not to award them); *Mazer v. Safeway, Inc.*, 398 F.Supp.2d 412, 426 (D.Md. 2005) (bonus was not "wages" because it was not "promised" given that the former employee "did not know whether he would ever receive a bonus").

Thus, under both Maryland and Connecticut law, it is irrelevant whether an employee may be *eligible* for a discretionary bonus when his employment ends. Rather, the critical question is whether an employee is *entitled* to a non-discretionary bonus at the time of his termination based on a contractual obligation or binding promise undertaken by his employer.

Applying these principles here, bonuses under the MICP are not "wages" under either Maryland or Connecticut law because they are awarded at the sole discretion of Stanley Black & Decker. In his amended complaint, Plaintiff generally alleges that he was "promised" payment of an MICP bonus "in exchange for performance of his job." (ECF No. 12 ¶ 7). Yet the only document that Plaintiff cites to as evidence of his entitlement to a $50,000 bonus for 2011 establishes that Stanley Black & Decker always retained discretion as to whether to award bonuses under the MICP. Specifically, the 2011 MICP Criteria document states that Stanley Black & Decker's Board of Directors "may *at any time* elect to amend, suspend, or terminate the Plan." (ECF No. 12-1, at 5) (emphasis added). Under the section titled

"Eligibility," the 2011 MICP Criteria document also states that "[p]articipation will be established by the Plan Administrator" and that "[t]he Plan does not affect the terms of any employment agreements that may exist between the Company and any Participant." (*Id.* at 4). Thus, Korba's eligibility for an MICP bonus in 2011 was at sole discretion of the Plan Administrator and was not required by any contractual provision of an employment agreement.

Moreover, the 2011 MICP Criteria document notes that all awards are subject to the terms and conditions included in the MICP Plan Document, an authenticated copy of which Defendant attaches to its motion. (ECF No. 13-4). The MICP Plan Document makes the discretionary nature of MICP bonuses even more explicit, stating that a subcommittee of Stanley Black & Decker's Board of Directors has "sole discretion" to make "final and binding" decisions regarding (1) whether to "grant Awards"; (2) "the persons to whom and the times or times at which Awards shall be granted"; and (3) "the terms, conditions, restrictions and performance criteria . . . relating to any Award." (*Id.* at 4). Combined, these provisions unequivocally establish that awards under the MICP are "awarded solely on a discretionary basis," *Zeems*, 289 Conn. at 782, and were not "promised" as part of Korba's employment agreement, *Whitting-Turner*, 366 Md. at

305, belying Plaintiff's unsupported allegations to the contrary.

Korba's argument that his 2011 MICP bonus somehow *became* non-discretionary at the conclusion of 2011 also is unavailing. As Plaintiff notes, the 2011 MICP Criteria document does state that "[a]wards will be determined as soon as practical after [Defendant's] Q4 and total year results are released in January. We expect payment of awards to occur in March or April following the plan year." (ECF NO. 12-1, at 6). Contrary to Plaintiff's argument that "[i]f goals are met [as of December 31, 2011], employees are paid," this provision does nothing to convert the payment of MICP bonuses from being discretionary to mandatory. At most, this clause sets a cut-off date for determining a Stanley Black & Decker employee's *eligibility* for an award.  It does not establish that Korba became *entitled* to an award at the end of 2011 given that, "at any time," Defendant's Board of Directors had the discretion to "amend, suspend, or terminate the Plan." (ECF NO. 12-1, at 5).  In light of this discretion, and because Plaintiff does not point to any other facts that would allow a reasonable jury to conclude that Defendant promised Plaintiff a $50,000 MICP bonus in exchange for performing his job duties during 2011, "there c[ould] be no proper expectation" of payment by Korba when he resigned. *Varghese*, 424 F.3d at 420.

12

Because Stanley Black & Decker always retained discretion as to whether to award an MICP bonus to Korba, Plaintiff's claim under the Connecticut wage payment statute fails as a matter of law. Plaintiff's MWPCL count likewise fails because the documents that Korba relies on directly contradict his allegation that Defendant "promised" him an MICP bonus in exchange for his job performance in 2011.[2] Defendant therefore is entitled to summary judgment on both of Plaintiff's statutory wage payment claims.

**C.   Breach of Contract Claim**

As to Plaintiff's breach of contract claim, Defendant contends that Stanley Black & Decker never extended a definite offer for the payment of a bonus to Plaintiff and therefore no valid contract was ever formed under either Maryland or Connecticut law. (ECF No. 13-1, at 21-24). Korba rejoins that the MICP became "a contract for payment" at the end of 2011, at which point he had "achieved the necessary targets to establish his right to be paid his bonus." (ECF No. 14-1, at 9). Here

---

[2] In light of these conclusions, Defendant's alternative arguments as to why Plaintiff's statutory claims must fail – including (1) that MICP bonuses are based primarily on corporate earnings rather than individual performance; (2) that the amount of MICP bonuses is indeterminate and discretionary; and (3) that, in any event, Plaintiff did not meet the MICP's requirement that he be employed on the date when MICP awards are paid – need not be reached.

again, Defendant's position has merit because, under both Connecticut and Maryland law, a discretionary bonus plan does not give rise to an enforceable contract.

Under Connecticut law, in order to establish a claim for breach of contract, a plaintiff must show "the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Bross v. Hillside Acres, Inc.*, 92 Conn.App. 773, 780–81 (2006). "[U]nder appropriate circumstances statements in an employee handbook or manual may give rise to an implied contract between an employer and its employee." *Christensen v. Bic Corp.*, 18 Conn.App. 451, 457 (1989). Statements regarding an employee bonus plan cannot, however, form the basis of an enforceable contract where its terms give the employer discretion as to whether to award a bonus at all. *Borden v. Skinner Chuck Co.*, 150 A.2d 607, 611 (Conn. Super. 1958). In *Borden*, a group of employees cited an employee handbook as the source of their employer's contractual obligation to pay a year-end bonus. The relevant provision in the handbook stated that it had been customary for the company to make a year-end payment to employees for over a decade, but noted that "[t]he amount of such payment, if any, depends upon the earnings available from operations, and is entirely at the discretion of the Board of Directors." *Id.* at 609. The court held that the inclusion of this discretionary language, combined

14

with other circumstances, meant that "some further declaration or action" was required on the part of the employer for a "definite offer" to exist. *Id.* at 610-11. "Without an offer to start with, there obviously could be no contract." *Id.* at 611; *see also Christensen*, 18 Conn.App. at 457 ("'[A] promise must be sufficiently certain in its terms to enable the court to understand what the promisor undertakes.'" (quoting 1 S. Korbaton Contracts (3d ed.) § 24)).

Likewise in Maryland, to succeed on a breach of contract claim, a plaintiff must prove that the opposing party owed a contractual obligation and breached that obligation. *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). "Longstanding . . . legal principles recognize that no enforceable contractual obligation is created when an employer offers employees a bonus for doing that which an employee is already required to do pursuant to the terms of the engagement of employment." *Windesheim v. Verizon Network Integration Corp.*, 212 F.Supp.2d 456, 462 (D.Md. 2002) (citing *Johnson v. Schenley Distillers Corp.*, 181 Md. 31 (1942)). Thus, in *Windesheim*, where an incentive plan bestowed the employer with the discretion to "reduce, modify, recover or withhold incentive pay" for any appropriate reason, the plan did not constitute an offer to enter into a binding contract for payment of a bonus. *Windesheim*, 212 F.Supp.2d at 462.

In his amended complaint, Plaintiff alleges that he and Stanley Black & Decker "entered into an agreement, for payment by Defendant to Plaintiff of his MICP Bonus, payable upon [] completion of all requirements and goals." (ECF No. 12 ¶ 20). In his opposition, Korba points to both the 2011 MICP Criteria document and the MICP Plan Document as the source of Black & Decker's contractual obligation to pay him a bonus. (ECF No. 14-1, at 9-10). As discussed above, however, both of these documents clearly establish that Stanley Black & Decker has unlimited discretion regarding whether to award any bonuses under the MICP. Hence, under both Maryland and Connecticut law, neither document can be construed as a definite offer by Defendant to pay Plaintiff an MICP bonus for 2011 or any other year. Because a contract cannot exist without a definite offer and because Plaintiff does not cite to any other source as establishing an express or implied contract between him and Stanley Black & Decker, Defendant is entitled to judgment on Korba's breach of contract claim.

**IV. Conclusion**

For the foregoing reasons, the motion to dismiss or, in the alternative, for summary judgment filed by Defendant Stanley Black & Decker will be granted. A separate order will follow.

             /s/
_____
DEBORAH K. CHASANOW
United States District Judge